IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD A. CHISHOLM, LTD.<br><br>Plaintiff,<br><br>v.<br><br>FULTON MARKET COLD STORAGE COMPANY LLC,<br><br>Defendant. | Case No. 09 C 4623<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald A. Chisholm, Ltd. ("Chisholm") filed a complaint against defendant Fulton Market Cold Storage Company ("Fulton") alleging damage to certain meat products that Chisholm stored in Fulton's warehouse. The complaint asserts claims of breach of bailment, breach of contract and negligence. Fulton now moves for summary judgment on six of its affirmative defenses. For the reasons that follow the Court grants in part and denies in part Fulton's motion.

**Fulton's Motion to Strike**

Before considering the substance of the summary judgment motion, the Court will address Fulton's motion to strike paragraphs 16 through 34 of Chisholm's Local Rule 56.1 statement of additional facts. Specifically, Fulton argues the Chisholm has asserted 98 statements of fact in 34 paragraphs and the first 15 paragraphs contain all 40 of Chisholm's allotted additional facts. The Court declines to strike the paragraphs.

Local Rule 56.1(b)(3)(C) permits the respondent to file 40 numbered paragraphs containing short statements of "any additional facts that require the denial of summary judgment." However, the rule does not mandate that each numbered paragraph contain only a

single discreet fact in a single sentence. This Court's review of the Chisholm's additional statements of fact does not agree with Fulton's estimation. Put another way, each sentence does not contain a separate and individual allegation.

The Court notes however that Chisholm is pushing the boundaries of what can be called short statements of only one or two individual allegations. Ultimately, the Court has discretion to determine whether to strike the statements of fact. *Ammons v. Aramark Unif. Servs.,* 368 F.3d 809, 817 (7th Cir. 2004). Here, this Court disagrees with Fulton's calculations that Chisholm has stated 98 separate statements of fact. The Court further notes that Fulton easily responded to each of Chisholm's additional statements of fact. Fulton's Motion to Strike is denied.

**Motion for Summary Judgment**

Fulton moves for summary judgment on its fifth, sixth, seventh, ninth, tenth and eleventh affirmative defenses. The fifth, sixth and seventh affirmative defenses relate to the subject ham products and the ninth, tenth, and eleventh affirmative defenses are the same but relate to the subject rib meat. Essentially there are three issues for the Court to consider as each relates to two different claims for damaged products: (1) whether there is a factual dispute that Chisholm failed to give Fulton written notice of its claim for damaged products (both ham and rib) within the 60 day time period in the warehouse receipt; (2) whether there is a factual dispute that Chisholm failed to bring an action against Fulton for the damaged meat products within the 12 month time period in the warehouse receipt; and (3) whether the warehouse receipt limits Fulton's maximum liability to fifty cents per pound.

**Background**

The following facts are undisputed unless otherwise noted. Chisholm is a Canadian corporation that buys and sells meat, dairy, and food raw materials. (Def. Statement of Material

Facts "SOF", Dkt. 47 at ¶¶ 1, 2.) Fulton is a Delaware corporation with a USDA approved warehouse and cold storage facility for meat products in Chicago, Illinois. (*Id*. at ¶¶ 3, 4.) Fulton is engaged in the business of receiving, storing, handling, and shipping of meat products. (*Id*. at ¶ 4.) In its complaint filed on July 30, 2009, Chisholm brought claims against Fulton alleging breach of bailment, breach of contract and negligence for damage to two types of meat products: freezer burn to three piece ham products and spoilage to frozen single rib bone products. (Compl. Dkt. 1.)

Fulton issues warehouse receipts for goods stored on its premises. (SOF, Dkt. 47 at ¶ 9.) Fulton's warehouse receipt contains a section limiting liability, which contains the following relevant provisions:

Section 10(a): "The warehouseman shall not be liable for any loss, damage or destruction to goods, however caused, unless such loss, damage or destruction resulted from the Warehouseman's failure to exercise such care in regards to the goods as a reasonably careful person would exercise under like circumstances."

Section 10(e): "in the event of loss, damage or destruction to stored goods for which the warehouseman is legally liable, storer declares and agrees that the warehousman's liability for damages shall be limited to 50¢ per pound." (*id*. At ¶ 6, ex. C.)

Section 10(g): "claims by the storer must be presented in writing within a reasonable time and in no event longer than 60 days after delivery of the goods. The warehouseman shall be offered a reasonable opportunity to inspect the goods. No action may be maintained by the storer or others against the warehouseman for loss or damage to goods covered hereunder unless a timely written claim has been made and the warehouseman has been offered reasonable opportunity to inspect the goods and unless such action has been commenced within 12 months

after date of delivery by the warehouseman." (SOF, Dkt. 47 at ¶ 18.)

Between March 17, 2008, and March 30, 2008, Fulton received the subject ham products for storage. (*Id* at ¶20.) A week earlier, on March 10, 2008, Chisholm emailed Amit Hasak, president and owner of Fulton, a request to pack and freeze the subject ham products separately in 60 pound catch weight cartons with blue poly bags. (Pl.'s Statement of Additional Facts "SAF", Dkt. 53 at ¶4.) Mr. Hasak admitted that he was unable to obtain blue poly bags. (*Id* at ¶5.) Mr. Hasak testified that he spoke with Sean Power at Chisholm about the blue poly bags but he could not find any email or other communication memorializing the conversation. (*Id*.) No bags were used at all in the boxing of the subject ham products. (*Id* at ¶6.) Fulton had clear bags, but Mr. Hasak could not recall if he presented that option to Chisholm. (*Id*.) Bags provide more protection against freezer burn than a liner assuming there is sufficient bag to tie shut. (*Id*.) Mr. Hasak admitted that freezer burn may not be detected until a box is opened. (*Id* at ¶8.)

At Chisholm's instruction, sometime during late March 2008 and early April 2008, Fulton loaded the subject ham products onto trucks provided by common carriers arranged by Chisholm to ship the subject ham products to Conestoga Cold Storage in Ontario, Canada. (SOF, Dkt. 47 at ¶ 21.) By April 15, 2008, all the subject ham products were shipped from Fulton's warehouse to Conestoga as directed by Chisholm. (*Id.* at ¶ 22.) Chisholm notified Fulton of damage to the subject ham products on approximately September 23, 2008. (*Id.* at ¶ 23.)

In early November 2008, Mr. Hasak traveled to Canada to inspect the subject ham products because he thought it would be good business practice even though "sixty days had passed since delivery." (SAF, Dkt. 53 at ¶9.) Mr. Hasak did not assert the sixty day notice provision for claims in his subsequent correspondence with Chishlom. (*Id.*) Mr. Hasak's inspection showed that none of the boxes appeared to have exterior damage that he noticed. (*Id.*)

Upon inspection of sample boxes Mr. Hasak saw freezer burn. (*Id.*) Mr. Hasak met with representatives from Chisholm to discuss the situation. Although Fulton admits only that Mr. Hasak discussed the situation with Chisholm representatives and how the freezer burn happened and where to go from there, Mr. Hasak testified that they discussed how to resolve the situation and that Fulton will try to work with them to get the situation resolved. (*Id.* at ¶10.)

On February 23, 2009, Mr. Hasak wrote to Chisholm stating that he thought there was significant paperwork missing to support the amount the Chisholm was claiming. (*Id.* at ¶11.) Mr. Hasak offered to pay $61,490. On April 21, 2009, Mr. Hasak wrote to Sean Power of Chisholm referencing for the first time to the sixty day claim limit. (*Id.*) Mr. Hasak offered $2000 because Chisholm was not "budging" on their demand for full compensation. (*Id.*)

Chisholm stored rib meat product at Fulton's warehouse during May 2008. (SOF, Dkt. 47 at ¶25.) Mr. Hasak received instructions from Chisholm prior to receiving the ribs that the shipping container would have to maintain a temperature of 18 degrees Celsius or 0 degrees Fahrenheit. (SAF, Dkt. 53 at ¶12.) The rib bones were loaded onto the container for shipping on or about June 3, 2008. (SOF, Dkt. 47 at ¶26.) The container did not have its refrigeration running when it arrived, but Mr. Hasak testified that containers never have the refrigeration on prior to and during loading. Mr. Hasak testified that Fulton is not allowed to turn on the refrigeration unit because that is something the drayage company does when they pick up the containers. Mr. Hasak testified that the container in which the ribs were loaded had its power cord cut. (SAF, Dkt. 53 at ¶14.) Mr. Hasak testified that in some instances Fulton has the container fixed, but it did not do so because the drayage company did not ask it to have the container fixed. (*Id.* Ex. A at 144.) Fulton noted on the shipping document that the power cord had been cut. (*Id.* at ¶21.) When the rib product arrived in Hong Kong it was spoiled. (*Id.* at ¶33.) Paul Barbuzian the

logistics manager at Chisholm testified that his investigation into the spoiled rib product showed that the damage had occurred before the cargo was loaded onboard the vessel. (*Id.*) Mr. Barbuzian testified that it took from June 4 to June 7 for the container to reach an acceptable temperature. (*Id.*) The extent of the damage was documented on October 13, 2008, after inspection in China. (*Id.*) Chisholm did not send Fulton a written claim of damage for the rib meat. (SOF, Dkt. 47 at ¶29.)

**Legal Standard**

A party is entitled to summary judgment if all of "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. Abdullahi v. City of Madison, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. Celotex v. Catrett, 477 U.S. 317, 324 (1986).

**Discussion**

Fulton moves for summary judgment asserting that the warehouse receipt is the only contract governing the storage of Chisholm's meat products and the limitations clauses in Section 10 of the warehouse receipt preclude Chisholm's claims, or, alternatively, limit Fulton's liability. Chisholm argues that there are genuine issues of material fact regarding whether the proffered warehouse receipts are relevant contracts for storage, whether "delivery" had occurred triggering the sixty-day notice of claims provision, whether the time limitation asserted by

Fulton is reasonable as required by the Illinois Uniform Commercial Code section governing warehouse receipts.

First, Fulton argues that it is entitled to summary judgment on its fifth and ninth affirmative defenses because Chisholm failed to comply with the warehouse receipt's limitation on liability provision that required Chisholm to make a claim in writing to Fulton within sixty days of delivery of the goods. Fulton contends that Chisholm did not make a claim of damage for either the ham product (fifth affirmative defense) or the rib product (ninth affirmative defense) within sixty days of delivery and thus is precluded from recovering for that damage.

Section 7-204 of the Illinois Uniform Commercial Code governs duty of care and allowable contractual limitations of warehouse's liability. Section 7-204(c) states: "Reasonable provisions as to the time and manner of presenting claims and commencing actions based on the bailment may be included in the warehouse receipt or storage agreement." 810 ILCS 5/7-204(c). Here, section 10(g) of the warehouse receipt stated that claims of loss or damage must be made within sixty days after <u>delivery</u> of the goods. The Illinois Uniform Commercial Code also does not contain a definition of delivery of goods. *See* 810 ILCS 5/7-102; 810 ILCS 5/1-201. The warehouse receipt does not provide any definition of "delivery" and neither party has presented any other document or evidence of what constitutes delivery. Fulton asserts that delivery occurred with respect to the meat products in this instance when the carrier picked up the meat products from the warehouse. Chisholm disputes this definition of delivery citing testimony from Sean Power, a Chisholm employee, who testified that delivery occurs once the customer has an opportunity to inspect the product. Thus, when viewed in the light most favorable to Chisholm this Court is unable to find as matter of law when delivery occurred for purposes of starting the clock running on the sixty day time limit for claims. Additionally, there is a material question of

fact as to whether sixty days is a reasonable time limit for presenting claims when the undisputed evidence here shows that the damage was not evident from the exterior of the boxes and there was testimony that goods may be stored for months before reaching an end user or otherwise being inspected.

However, Chisholm does not dispute that it failed to make any written claim for the damaged rib product. The warehouse receipt, which Chisholm acknowledges that it received, expressly requires written notice of a claim before any action may be filed. Chisholm has not presented any affirmative evidence contravening or modifying that provision. Therefore, the Court grants Fulton's motion for summary judgment on the ninth affirmative defense.

Fulton's argument as to the sixth (ham product) and tenth (rib product) affirmative defenses suffers from the same flaw since those defenses relate to the twelve month period for bringing an action based on damage or loss of the stored products. Fulton argues that it is entitled to summary judgment because Chisholm failed to file the instant law suit within twelve months of delivery as required by the warehouse receipt. Section 10(g) of the warehouse receipts requires an action for loss or damage to goods to be filed within twelve months of delivery by the warehouse. For the reasons stated above this Court is unable to state what delivery means as a matter of law for the purposes of starting the clock running on the twelve month period for filing an action. However, with respect to the rib meat, Chisholm did not submit to Fulton a written claim of the damage and therefore waived its right pursuant to the warehouse receipt to file a cause of action for the spoiled rib meat. Accordingly, this Court denies summary judgment on Fulton's sixth and grants the motion as to the tenth affirmative defense.

Lastly, Fulton argues that it is entitled to summary judgment on its seventh and eleventh affirmative defenses because the material facts clearly establish that, to the extent Fulton is liable

to Chisholm for any alleged damage to either the ham or the rib products, Fulton's maximum liability is limited to fifty cents per pound pursuant to section 10(e) of the warehouse receipt. Chisholm argues that Fulton waived this provision by offering to settle the dispute for a sum beyond the fifty cents per pound limitation in the warehouse receipt.

> Section 7-204(b) of the Illinois Commercial Code states that:
>
> "Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage beyond which the warehouse is not liable. Such a limitation is not effective with respect to the warehouse's liability for conversion to its own use. On request of the bailor in a record at the time of signing the storage agreement or within a reasonable time after receipt of the warehouse receipt, the warehouse's liability may be increased on part or all of the goods covered by the storage agreement or the warehouse receipt. In this event, increased rates may be charged based on an increased valuation of the goods." 810 ILCS 5/7-204(b).

Here, section 10(e) of the warehouse receipt limits liability for the loss and damage of goods to fifty cents per pound. Section 12 of the warehouse receipt contains a non-waiver clause that states in relevant part that Fulton's "failure to insist upon strict compliance with any provision of these terms and conditions shall not constitute a waiver or estoppel to later demand strict compliance thereof and shall not constitute a waiver or estoppel to insist upon strict compliance with all other provisions of these terms and conditions." Non-waiver clauses are enforceable in Illinois and may be binding even if strict compliance with contract has not been enforced. *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 277 (7th Cir. 1996) (citing *Monarch Coaches, Inc. v. ITT Industrial Credit*, 818 F.2d 11, 13 (7th Cir. 1987) and *Transcraft Corp. v. Anna Indus. Dev. Corp.*, 223 Ill. App. 3d 100, 584 N.E.2d 1033, 1035, 165 Ill. Dec. 599 (Ill. App. Ct. 1991)). Here, there is no dispute that Chisholm received the warehouse receipt from Fulton and there is no evidence presented by Chisholm dispute the enforceability of this provision. Accordingly,

this Court grants summary judgment in favor of Fulton on its seventh and eleventh affirmative defenses limiting its liability to fifty cents per pound.

**Conclusion**

For the reasons stated above, the Court denies Fulton's Motion to Strike [61] and grants in part and denies in part Fulton's Motion for Summary Judgment [46].

IT IS SO ORDERED.

Date: 12/13/2011

Entered: _____
Sharon Johnson Coleman